UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                   CASE NO.

**JOHNNIE GREGORY BONDS**                           **13-12497**
**LAVELLE FORD BONDS**                                   **SECTION A**

DEBTORS                                                      CHAPTER 7

## REASONS FOR DECISION

This matter is before the Court pursuant to Johnnie and Lavelle Bonds' ("Debtors") Motion To Avoid Judicial Liens Under 11 U.S.C. Section 522 (pleading 20), along with Debtors' supporting memorandum (pleading 29).

### I. Findings of Fact

Among Debtors' assets was a home encumbered by first and second mortgages. The home had a fair market value of $159,300.00.[1] Citimortgage held a first mortgage over the property securing a debt with a balance of $47,145.00.[2] The second mortgage was also held by Citimortgage and secured an additional debt with a balance of $14,036.57.[3] Debtors also claimed a homestead exemption of $35,000.00.[4]

Debtors filed a voluntary petition for relief under the United States Bankruptcy Code, Chapter 7, on September 11, 2013. Prior to the filing of Debtors' bankruptcy proceeding, but subsequent to the recordation of the first and second mortgages on Debtors' home, two judgments were taken against Debtors and recorded in the mortgage records of Tangipahoa Parish:

---

[1] Pleading 20, Exhibit B, Schedule A.

[2] Pleading 20, Exhibit B, Schedule D.

[3] Pleading 20, Exhibit B, Schedule D.

[4] Pleading 20, Exhibit B, Schedule C.

      1. A Judgment rendered in favor of Home Bank in the matter entitled Home Bank vs. Johnnie Gregory Bonds and Lavelle Ford Bonds and G & L Bonds Investments, Inc. of the 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana, a copy of said Judgment being recorded as Instrument number 876419, on June 7, 2012 in the amount of $297,157.53, recorded in MOB 2113 and Page 198;[5] and

      2. A Judgment rendered in favor of First Bank and Trust in the matter entitled First Bank and Trust vs. Johnnie Gregory Bonds and Lavelle Ford Bonds of the 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana, a copy of said Judgment being recorded as Instrument number 900971, on July 8, 2013 in the amount of $43,892.56, recorded in MOB 2220 and Page 1 (collectively "Judgments").[6]

Both Judgments encumber Debtors' home but are subordinate in rank to the two (2) Citimortgage mortgages and Debtors' homestead exemption. *Farrey v. Sanderfoot*, 500 US 291, 300, 111 S.Ct. 1825, 1831, 114 L.Ed.2d 337 (1991) (if debtor possessed an interest, such as a homestead exemption, in property before lien attached, lien is subordinate to preexisting interest); *American Nat. Ins. Co. v. Heller Financial*, 989 F.2d 854, 856 (5th Cir. 1993) (Louisiana law ranks liens, in terms of priority, by dates they are recorded).

      Once the amount of indebtedness secured by the mortgages and the homestead exemption are deducted from the value of Debtors' home, the remaining equity or value in the property available to secure the Judgments is $63,118.43. Since the remaining value is less than the amount owed Home Bank under its judicial lien, Debtors argue Home Bank's secured claim should be bifurcated with $63,118.43 allowed as secured and the remainder unsecured. As there is no remaining value to satisfy First Bank and Trust's judicial lien, Debtors assert that it should be completely avoided.

---

[5] Pleading 20, Exhibit C.

[6] Pleading 20, Exhibit C.

Two issues are before the Court: 1) whether the liens at issue impair Debtors' homestead exemption, thereby allowing the avoidance pursuant to 11 U.S.C. § 522(f); and (2) whether under *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992), a nonconsensual judicial lien may be avoided, in whole or in part, if insufficient equity exists to secure its debt.

## II. Analysis

### A. *Dewsnup v. Timm*

In *Dewsnup*, a debtor sought to avoid a portion of a mortgage or consensual lien secured by his property. The value of the property was substantially less than the balance due. Citing 11 U.S.C. § 506(d),[7] the debtor asserted the right to bifurcate the partially secured debt into secured and unsecured portions and reduce or "strip off" the lien to only the value of his property.

In the context of a Chapter 7 proceeding, the *Dewsnup* Court held that § 506(d) does not allow a debtor to "strip down" or avoid a creditor's lien, reasoning that the debt was secured and had been fully allowed under 11 U.S.C. § 502. *Id*. at 417. The *Dewsnup* Court specifically limited its holding to the facts before it, providing: "We . . . focus upon the case before us and allow other facts to await their legal resolution on another day." *Id*. at 416-17. Unlike *Dewsnup*, this case involves nonconsensual judicial liens which are also subject to § 522(f).

Based upon the specific issue before the Supreme Court, *i.e.*, whether a consensual mortgage lien can be avoided, and the fact that the Court specifically limited its holding to the facts of the case, several courts have strictly interpreted *Dewsnup*, holding that it does not apply to nonconsensual judicial liens. *See In re Blair*, 2001 WL 36404548, *1-2 (Bkrtcy. S.D. Ga. Jan. 19,

---

[7] §506(d) provides, in pertinent part: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."

2001) (nonconsensual judicial lien is not protected by safe harbor ruling in *Dewsnup*); *Butler v. Southern O Corporation*, 196 B.R. 329, 330 (Bkrtcy W.D. Va. May 21, 1996 (*Dewsnup* not applied to nonconsensual judicial lien); *In re Howard*, 184 B.R. 644, 647 (Bkrtcy. E.D. N.Y. Aug. 2, 1995) (*Dewnup* not applicable to defendant's judicial lien); *In re Jones*, 166 B.R. 657, 662 n.7 (Bkrtcy. N.D. Ill. April 22, 1994) (*Dewsnup* not applicable to a judicial lien); *In re Prestegaard*, 139 B.R. 117, 120 (S.D. N.Y. April 22, 1992) (*Dewsnup* inapplicable to judicial lien). Conversely, other courts have applied *Dewsnup* to nonconsensual judicial liens. *See In re Concannon*, 338 B.R. 90, 97 (9th Cir. BAP 2006) (*Dewsnup* stripping prohibition applies to nonconsensual judicial lien); *Boring v. Promistar Bank*, 312 B.R. 789, 797 (W.D. Pa. Aug. 5, 2004) (*Dewsnup* prevents stripping off of allowed, nonconsensual judicial lien); *Crossroads of Hillsville v. Payne*, 179 B.R. 486, 490 (W.D. Va. March 14, 1995) (*Dewsnup* decision applies to all liens in a Chapter 7 bankruptcy whether consensual or nonconsensual); *In re Esler*, 165 B.R. 583, 584 (Bkrtcy. D. Md. March 17, 1994) (*Dewsnup* is equally applicable to consensual and nonconsensual liens).

After considering the various opinions interpreting *Dewsnup* and in accordance with *Dewsnup's* instruction to confine its ruling to the facts before it, a narrow interpretation of its effect is warranted. To begin, § 506 provides a debtor with the right to bifurcate or "cram down" a secured claim to the value of the property encumbered. The remaining undersecured portion or deficiency is then treated as an unsecured claim. Chapter V is generally applicable to all chapters under bankruptcy.

The bankruptcy code does not define a secured claim except to provide in § 506, that a secured claim encumbers property of the estate. The Code defines an "allowed claim" as one to which "a party in interest" does not object. 11 USC § 502(a). Therefore, an allowed secured claim

would be a claim to which no objection has been raised or granted and that is secured by property of the estate. By challenging the claim, a debtor necessarily is objecting to allowance. Thus, § 506 provides a mechanism for challenging the extent of a secured claim's reach over property of the estate.

*Dewsnup* held that a secured, consensual lien could not be bifurcated because by its nature it was an allowed secured claim. The *Dewsnup* Court conflated consensual with "allowed," failing to address the bankruptcy principle that an allowed claim is one not subject to objection. The interplay between the bankruptcy concepts of "allowance" and "secured claims" and the difference between them was not properly examined by the *Dewsnup* Court. Nor did the Court explain how the specific right to bifurcate an unsecured claim into secured and unsecured portions under § 506(d) was eliminated simply by the existence of a security interest.

The *Dewsnup* Court also failed to explain how under its interpretation of § 506(a), § 506(d) could <u>ever</u> be applicable to any chapter of the bankruptcy code. By holding that an undersecured claim was by definition an allowed secured claim, no secured claim could ever be bifurcated. Thus, *Dewsnup's* interpretation effectively eliminated any application of § 506(d) which, by its very terms, is employed to reduce undersecured claims to the value of the property.

The *Dewsnup* interpretation also violates the general rules of statutory construction which require courts give effect to the plain reading of a statute if to do so does not lead to absurd results. *Mach Min., LLC v. Secretary of Labor, Mine Safety and Health Admin.* 728 F.3d 643, 647 (7th Cir. 2013), *cert. denied*, 2014 WL 1515720 (2014) (cardinal rule of statutory interpretation is that courts must adhere to the plain meaning of the statutory language). The logical extension of *Dewsnup's* holding also reads out any use of § 506(d) under any chapter. This violates yet another principle of

legislative construction, which warns when faced with ambiguity in construction, courts are to interpret statutes so as to give effect to the entirety of the statute rather than adopt a construction that eliminates a provision entirely. *BNSF Ry. Co. v. U.S.,* 2014 WL 983196, n. 89 (5th Cir. 2014) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) ("a cardinal rule of statutory construction is that 'a statute should be interpreted so as not to render one part inoperative.'").

The *Dewsnup* Court might have, but did not, base its ruling on the requirement that the collateral be "property of the estate" as in *Dewsnup* the Trustee had abandoned the collateral as unworthy of administration. Abandonment removes the property from the estate. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 123 (2nd Cir. 2008), *cert. denied*, 555 U.S. 1213, 129 S.Ct. 1534, 173 L.Ed.2d 658 (2009) ("[o]nce asset is abandoned, it is removed from the bankruptcy estate . . . ."). Thus application of § 506(d) might be limited to liens involving property still in the estate, a fact not present in *Dewsnup*.

For the above reasons, *Dewsnup's* holding has been questioned and limited. *See In re Cunningham*, 246 B.R. 241, 246 (Bkrtcy. D. Md. March 23, 2000) (citing Lawrence Ponoroff & F. Stephen Knippenberg, *The Immovable Object Versus the Irresistible Force: Rethinking the Relationship Between Secured Credit and Bankruptcy Policy*, 95 Mich. L. Rev. 2234 (1997); Margaret Howard, *Secured Claims in Bankruptcy: An Essay on Missing the Point*, 23 Cap. U. L. Rev. 313 (1994); Barry E. Adler, *Creditors Rights After Johnson and Dewsnup*, 10 Bankr. Dev. J. 1 (1993); Margaret Howard, *Dewsnupping the Bankruptcy Code*, 1 J. Bankr. L. & Prac. 513 (1992)) It is for these reasons that this Court finds *Dewsnup's* directive to limit its application narrowly and on its facts to be both warranted and preferable. This case is also distinguishable from *Dewsnup* on

an important ground, § 522(f), as the *Dewsnup* Court did not need to consider § 522's effects on the lien in question.

    B. 11 U.S.C. § 522(f)

Section 522(f)(1)(A) allows a debtor to avoid the fixing of a judicial lien on his property to the extent the lien impairs an exemption to which the debtor is entitled. *Ramos v. Ortiz Negron*, 24 CBN 83, 2013 WL 5738238 (Bankr. 1st Cir. Oct. 22, 2013). Unlike § 506, § 522 does not require that the lien encumber property of the estate. Therefore a request to strip or limit a secured debt under § 522 eliminates the need for proof that the property is in the estate. Section 522(f)(2)(A) sets forth an arithmetic test to determine whether a lien impairs an exemption, providing:

> A lien shall be considered to impair an exemption to the extent that the sum of–
>     (i) the lien;
>     (ii) all other liens on the property; and
>     (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value of the debtor's interest in the property in the absence of any liens.

In *In re Brantz*, 106 B.R. 62, 68 (Bkrtcy. E.D. Pa. Oct. 2, 1989), the Court set forth the following formula:

> 1. Determine the value of the property upon which the judicial lien attaches.
> 2. Deduct the amount of all unavoidable liens from (1) (*i.e.*, priming liens).
> 3. Deduct the Debtors' allowable exemptions from (2)
> 4. Avoidance of the judicial lien results unless (3) is a positive figure.
> 5. If (3) is a negative figure, disallow the liens, in order of priority, until (3) is neutral.

In the instant matter, Debtors' property is worth $159,300.00. There are primary mortgages in the amount of $61,181.57. The Debtors have claimed a $35,000.00 homestead exemption. Home Bank's third ranking judicial lien is in the amount of $297,157.53, and First Bank and Trust's fourth

7

ranking judicial lien is in the amount of $43,892.56.[8] When the amount of the mortgage liens ($61,181.57) and the exemption ($35,000) are subtracted from the property's value ($159,300.00), the amount available to satisfy the judicial liens is $63,118.43. That amount is applied to Home Bank's third ranking judicial lien, leaving an undersecured balance of $234,039.10. Under §522(f)(1), the Debtors are allowed to treat that amount as unsecured avoiding the judicial lien or bifurcating it into secured and unsecured portions under § 506(d). As there is no amount left to satisfy any portion of First Bank and Trust's judicial lien, the Debtors are allowed to avoid the entire lien amount of $43,892.56 and treat the debt as unsecured. *See In re Cross*, 164 B.R. 496, 497 (Bkrtcy. E.D. Pa. March 7, 1994) (where there is no remaining equity in the property after deduction of non-avoidable mortgages and debtors' exemption, judicial lien is avoidable in its entirety); *In re Levasseur*, 482 B.R. 15, 35 (Bkrtcy. D. Mass. Oct. 29, 2012) (where judicial lien in its entirety impairs debtor's exemption, § 522(f)(1)(A) requires avoidance of the lien in full);.

Because: 1) the *Dewsnup* Court limited its holding to the specific facts before it, namely the reduction or bifurcation of an undersecured mortgage or consensual lien; and, 2) § 522 allows for the avoidance of nonconsensual judicial claims which impair the homestead exemption; this Court distinguishes *Dewsnup's* holding from the facts before it and finds it inapplicable.

As a result, the judicial lien of First Bank and Trust shall be avoided and the secured claim of Home Bank reduced to the sum of $63,118.43.

---

[8] There is no dispute regarding the value of the property, the exemption to which the debtors are entitled, or the amounts secured by the mortgage and judicial liens.

A separate Order will be rendered in accord with these Reasons for Decision.

New Orleans, Louisiana, May 5, 2014.

                                      Hon. Elizabeth W. Magner
                                      U.S. Bankruptcy Judge